UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PATRICK CLOUTIER,<br><br>*Plaintiff*,<br><br>v.<br><br>LEDYARD BOARD OF EDUCATION,<br><br>*Defendant*. | Civil No. 3:20cv1690 (JBA)<br><br>November 22, 2022 |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Defendant Ledyard Board of Education moves for summary judgment on Plaintiff's hostile work environment claim, brought under both Title VII and the Connecticut Fair Employment Practices Act[1]. (Def. Mot. for Summ. J. [Doc. # 62].) Defendant argues there is "no specific basis for imputing liability for Plaintiff's co-worker harassment to Defendant," and that it "can establish the *Faragher/Ellerth* defense" as to the supervisory harassment. (*Id.*) Plaintiff opposes, arguing that there is a sufficient basis to show actual or constructive knowledge by Defendant of the harassment he faced by his coworkers, and that Defendant cannot show that it satisfies either prong under the *Faragher/Ellerth* defense. (Pl.'s Mem. in Opp. to Mot. for Summ. J. [Doc. # 67].) For the reasons discussed below, Defendant's motion is DENIED.

**I.     Undisputed Facts**

---

[1] Defendant's motion asserts that the only remaining claim is under Title VII, but the Court's ruling on the Motion to Dismiss specified that the Title VII and CFEPA claims would be analyzed together under the same standard and denied Defendant's motion to dismiss Plaintiff's hostile work environment "claims," plural. (*See* Order on Mot. to Dismiss [Doc. # 45].)

Plaintiff was employed by Defendant as a substitute teacher starting in May 2018 to cover classes at various schools operated by Defendant. (Def. Loc. R. 56(a)(1) Stmt. [Doc. # 62-1] ¶ 1-3.)[2] Plaintiff alleges that he was harassed by a number of figures both employed by and contracted by Defendant, more thoroughly detailed below, over the course of the school year. (Def. Mem. in Support of Mot. for Summ. J. [Doc. # 62-2].) Defendant had an anti-harassment and anti-discrimination policy during Plaintiff's time there, and Plaintiff signed an acknowledgment that he had received and read the policy. (Def. Loc. R. 56(a)(1) Stmt. ¶ 35-36). Plaintiff never filed a complaint alleging harassment pursuant to the policy or made a complaint through any alternative channel because he believed the result would be "retaliatory termination of his employment by Defendant for making the complaint," which he based on "common knowledge" and "common sense," but no specific awareness of Defendant ever retaliating against anyone for making a complaint pursuant to its anti-harassment policy. (*Id.* ¶ 39-41.)

On June 13, 2019, Plaintiff played two videos for his class of sixth graders: a Justin Bieber documentary "in which Justin Bieber behaves rudely and/or disrespectfully," and a YouTube video titled "Elvis, His Latest Flame Collection Hot Girls Shuffle Dancing." (*Id.* ¶ 30-

---

[2] Defendant argues that Plaintiff's denials of its statements of undisputed facts at paragraphs 12 and 38, its partial denials of paragraphs 27, and its non-answer of paragraph 33 should all be considered "admitted" by the Court because none comply with D. Conn. L. Civ. R. 52(a)(3), which requires that each "denial in an opponent's Local Rule 56(a)2 Statement [] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial.". (Def. Reply to Mot. for Summ. J. [Doc. # 68] at 3.) Defendant is correct that Plaintiff's denials are not accompanied by a citation to either an affidavit or any other admissible evidence and answering "unknown" is not permitted by the Local Rules. The Court thus disregards the Plaintiff's denials of paragraphs 12, 27, 22, and 38 and consider the statements admitted for failure to comply with the local rules. However, Defendant's request that the Court completely disregard Plaintiff's Statement of Additional Material Facts is rejected; the Court has evaluated the materiality of each fact and incorporated those facts where appropriate.

32.) Many of the students complained the videos made them "uncomfortable and upset." (*Id.* ¶ 33.) Defendant sent Plaintiff a letter dated July 25, 2019, informing Plaintiff his employment was terminated. (*Id.* ¶ 34.)

### A. Statements made by Supervisory Figures

During the 2018-2019 school year, supervisory figures with hiring and firing authority and/or supervisory direction over Plaintiff were Principal Pamela Austen, Assistant Principal James Buonocore, Assistant Principal William Turner, and Assistant Superintendent Anne Hogsten, who was the Civil Rights Officer and contact person for Defendant's harassment policy. (*Id.* ¶ 5, 37.) The following statements regarding Plaintiff's sexuality or sexual preferences are attributed to one or more of these supervisory figures:

- "Plaintiff overheard a teacher, Ms. Reed, and Dr. Pamela Austen have a conversation in which Reed asked Austen 'do you really think [Plaintiff] is a gigolo?' to which Dr. Austen responded, 'No but that's what he's being branded.'" (*Id.* ¶ 14.)
- "Vice Principal Buonocore mouthed the word 'homosexual' while looking at Plaintiff in the cafeteria." (*Id.* ¶ 21.)
- "In either September or October of 2018, Plaintiff said 'That's a nice dress you have on' to Anne Hogsten, to which she responded, 'Do you want me to slut shame you?'" (*Id.* ¶ 22.)
- "On a different occasion, Ms. Reed remarked to Dr. Austen that Plaintiff 'likes an old lady,' to which Dr. Austen responded, 'I know.'" (*Id.* ¶ 23.)
- "On another occasion, Ms. Hogsten had come to school with a guest, and Plaintiff overheard Ms. Hogsten say to her guest that Plaintiff 'likes an old lady.'" (*Id.* ¶ 25.)

Plaintiff also alleges that Robin Harris, the secretary of the Board of Education, called him a "whore" in several instances when ending phone conversations with him. (Pl.'s Local R. 56(a)(2) Stmt. Of Add. Material Facts [Doc. # 67-1] ¶ 5; Def.'s Exhibit B, Hogsten Dep. [Doc. # 62-4] at 23:6-22.) While she was not a supervisor, Ms. Harris was Plaintiff's point of contact with Defendant during the hiring process; she initially contacted him to fill out the application paperwork and come in for an interview and interviewed Plaintiff for his position with Defendant schools. (Def.'s Exhibit A, Cloutier Dep. [Doc. # 62-3] at 29:24-30:8.)

### B.    Statements made by Non-Supervisory Figures

Several individuals with no supervisory authority also made sexually derogatory or offensive comments towards Defendant through the course of the year:

- Paraprofessionals Michael McCray and Nick Gray called Plaintiff a "faggot," "gay," and a derogatory word Plaintiff could not understand on more than one occasion in a hallway corridor, a parking lot, a library resource room, and the cafeteria. (*See* Def. Local R. 56(a) Stmt. ¶ 7-13.)
- IT person Jill Evans called Plaintiff a "whore" "two or three times" in the hallway. (*Id.* ¶ 15.)
- Ms. Russak, a math teacher, called Plaintiff a "whore" two times. (*Id.* ¶16.)
- Paraprofessional Tracy (last name unspecified) called Plaintiff a "man whore" and a "whore." (*Id.* ¶ 17.)
- An unspecified person at Center School called Plaintiff a "slut." (*Id.* ¶ 19.)
- Construction crew workers working at Gallup Hill School, whose employment relationship with Defendant is unknown, called Plaintiff a "boy toy." (*Id.* ¶ 20.)
- Paraprofessional Nick Gray commented to his son, a student in the same school Nick Gray worked in, that Plaintiff "likes an old lady." (*Id.* ¶ 24.)

## II.    Legal Standard

Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006)[3] (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

## III.   Discussion

Plaintiffs bringing hostile environment claims must establish "[1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [2] that a specific basis exists for imputing the objectionable conduct to the employer. *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002).[4]

---

[3] Unless otherwise indicated, internal citations, quotation marks, and other alterations are omitted throughout in text quoted from court decisions.

[4] Because claims under CFEPA "are analyzed in the same manner as those under Title VII," the Court's analysis applies to both Plaintiff's Title VII and CFEPA hostile environment claims. *Kearney v. City of Bridgeport Police Dep't*, 573 F. Supp. 2d 562, 573 (D. Conn. 2008); *see also Javier v. Deringer-Ney, Inc.*, No. CIV.A307CV1863VLB, 2009 WL 3193876, at *5 (D. Conn. Sept. 30, 2009), *aff'd*, 419 F. App'x 100 (2d Cir. 2011) (applying the same analysis for Title VII and CFEPA claims at summary judgment.)

The Court ruled at the motion to dismiss stage that Plaintiff had plausibly alleged facts giving rise to an inference of hostility that "relied on sex-based considerations," *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241-42 (1989), and that the "hostility was so severe or pervasive as to affect the conditions of his employment." (Order on Mot. to Dismiss at 14.) Defendant assumes for the purposes of its motion that Plaintiff can establish the same at trial, (*see* Def.'s Mem. at 8), and so the question of whether Plaintiff was indeed subjected to the comments he alleges, and whether those comments were sufficiently severe or pervasive to alter his conditions of employment, would be left for jury determination if the second prong is also met. (Def.'s Mem. at 4.) This is where the disagreement between the parties begins: Defendant maintains that there is no reasonable basis for imputing liability for the hostile environment created by Plaintiff's coworkers to it, while Plaintiff maintains that there is. (Def.'s Mot. at 1; Pl.'s Opp'n at 1.) As for the supervisory harassment, Defendant asserts that its occurrence is "disputed" but assumes its truth for purposes of the motion, leaving the dispute's ultimate resolution for the jury. (Def.'s Mem. at 4.) While supervisory harassment is imputed to employers as a matter of law, Defendant argues that the *Faragher/Ellerth* affirmative defense shields it from liability for supervisory harassment based on undisputed facts in the record; Plaintiff, on the other hand, asserts that material disputes of fact remain over the defense's applicability that require jury determination. (Def.'s Mem. at 14; Pl.'s Opp'n at 8-13,)

The Court considers each argument in turn.

    **A.    Liability for Non-Supervisory Coworker Harassment**

"Whether the harassing conduct of a supervisor or coworker should be imputed to the employer is determined in accordance with common-law principles of agency," *Murray v. New York Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995), which utilize a "negligence standard." *Roginsky v. M&T Bank*, No. 19-CV-1613(LJV)(JJM), 2022 WL 2671707, at *17

(W.D.N.Y. June 21, 2022), *report and recommendation adopted*, No. 19-CV-1613-LJV-JJM, 2022 WL 2669920 (W.D.N.Y. July 11, 2022)(quoting *Martin v. New York*, 799 F. App'x 68, 69 (2d Cir. 2020) (Summary Order)). The Second Circuit has established a two-pronged inquiry for determining employer liability for coworker harassment, holding an employer liable if it either "failed to provide a reasonable avenue for complaint" or "it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009) (quoting *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000)).

### 1. Reasonable Avenue for Complaint

In determining whether a reasonable avenue for complaint exists, "the relevant inquiry is not whether a *particular* avenue of complaint was effectively blocked but, rather, whether defendants 'provided *no* reasonable avenue of complaint.'" *Duch*, 588 F.3d at 762–63 (emphasis in original)(quoting *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 63 (2d Cir.1998)). When one of the people designated as an avenue of complaint is also the harasser, "the facts and circumstances of each case must be examined to determine whether, by not pursuing other avenues provided in the employer's sexual harassment policy, the plaintiff unreasonably failed to take advantage of the employer's preventative measures," recognizing "there may be reasons why the plaintiff failed to complain to those other than the harasser, who are listed as available." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105 (2d Cir. 2010). Typically, "[t]he question of whether an employer has provided a 'reasonable avenue of complaint' is a question for the jury, whose inquiry is informed by the evidence as a whole. . ." *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1181 (2d Cir. 1996).

Defendant argues that it provided three reasonable avenues to report harassment: the Civil Rights Officer, the "Superintendent or their designee," or the Office of Civil Rights for the U.S. Department of Education. (Def. Mem. at 11-12)(citing Def.'s Exhibit C, Anti-

7

Harassment Policy at 2.) These three avenues are not quite as expansive as Defendant argues for an obvious reason: the Civil Rights Officer/Assistant Superintendent is one of the alleged harassers. Although two other avenues remain available, the policy repeatedly directs sexual harassment questions, concerns, and complaints primarily to the Civil Rights Officer, (*see* Exhibit C, Anti-Harassment Policy at 2-4), and is distinguishable from the policy in the Defendant's cited case *Duch* where the harassment policy provided "at least five different sources *in addition to the EEO Office*" that the victim could file a complaint through. *Duch*, 588 F.3d at 762–63 (emphasis added).

The reasonableness of Defendant's alternative avenues for complaint must be considered in light of the chilling effect that harassment by the Civil Rights Officer would likely have on a victim seeking to make a complaint. *See Gorzynski* 596 F.3d at 104-105 ("[t]here is no requirement that a plaintiff exhaust all possible avenues made available where circumstances warrant the belief that some or all of those avenues would be ineffective or antagonistic.") At oral argument, Plaintiff's counsel emphasized that in addition to being "demoralized" by the persistent nature of the harassment, he was intimidated by the prospect of pitting his word as a substitute teacher—a position low in the school's hierarchy—against the Civil Rights Officer and assistant superintendent. Further, the difficulty of pursuing other avenues remains in question because neither side offers any evidence as to how Plaintiff should have reached the Superintendent or their designee to make a complaint; this unresolved fact is material because if it would have required going through the Board of Education's central office secretary, Robin Harris, Plaintiff would have further reason to be deterred from making a complaint based on her repeated uses of the word "whore" to refer to him. *Compare with Charley v. Total Off. Plan. Servs., Inc.,* 202 F. Supp. 3d 424, 432 (S.D.N.Y. 2016) (finding there was a reasonable avenue of complaint where an employee being harassed by a coworker where there was "no assertion in the record that

[the plaintiff] did not think she could speak to the foreman about any alleged discrimination or that she feared retaliation if she complained to the foreman") *and Borrero v. Collins Bldg. Servs., Inc.,* No. 01 CIV. 6885 (AGS), 2002 WL 31415511, at *12 (S.D.N.Y. Oct. 25, 2002) (declining to find that no reasonable avenue of complaint existed because there was "no allegation that [the plaintiff] was confused or concerned about her ability to reach [defendant] management to tell them about the incident").

As for Defendant's claim that the availability of OCR served as a reasonable avenue of complaint, this was not an avenue of complaint that *Defendant* "provide[d]" to Plaintiff, nor does Defendant address whether a method of complaint that leaves a victim with no immediate recourse from *anyone* within his immediate workplace is reasonable. *Duch*, 588 at 762. To find that OCR alone serves as a reasonable avenue of complaint would exempt employers' own complaint procedures from scrutiny, because an individual can always theoretically report harassment to OCR.

Based on the above, it remains a genuinely disputed material fact whether a reasonable avenue of complaint was provided by Defendant, requiring resolution by a jury.

### 2. Actual or Constructive Knowledge of the Harassment

Plaintiff asserts that even if there were reasonable avenues of complaint available, summary judgment would be inappropriate because whether Defendant had constructive knowledge of the harassment also requires jury resolution. To establish the actual or constructive knowledge of harassment by the employer, a plaintiff must show "that (1) *someone* had actual or constructive knowledge of the harassment, (2) the knowledge of this individual can be imputed to the employer, and (3) the employer's response, in light of that knowledge, was unreasonable." *Duch*, 588 F.3d at 763. An official's knowledge of harassment will be imputed to the employer when "a) the official is at a sufficiently high level in the company's management hierarchy to qualify as a proxy for the company, or b) the official is

9

charged with a duty to act on the knowledge and stop the harassment, or c) the official is charged with a duty to inform the company of the harassment." *Id.*

Defendant's counsel argued that to be a vice principal, principal, or even assistant superintendent does not necessarily qualify an official as a "proxy" for Defendant under *Duch*. However, as the Civil Rights Officer charged with receiving and addressing complaints of sexual harassment, Anne Hogsten qualifies as an "official charged with a duty to act on" or "inform the company" of the harassment such that her knowledge may be imputed to Defendant. Whether she can be shown to have had actual or constructive knowledge of Plaintiff's harassment is disputed by the parties.

Defendant argues that Plaintiff provides no specific evidence on which to base his claim that Anne Hogsten was aware of the harassment, and that alleging that the harassment was "so grievous that it must have been obvious to everyone" is not sufficient. (Def.'s Mem. at 12-14) (quoting *Murray,* 57 F.3d at 249). Defendant is correct that the Court may not find constructive knowledge by supervisory figures merely because they were present in the school when conduct leading to the hostile environment took place, or even because they are alleged to have engaged in harassment themselves. *See Hoit v. Cap. Dist. Transportation Auth.,* No. 1:15-CV-134 (CFH), 2018 WL 2324050, at *7 (N.D.N.Y. May 22, 2018), *aff'd*, 805 F. App'x 41 (2d Cir. 2020)("the mere existence of inappropriate conduct or material in a workplace where a supervisor would be present is not enough to demonstrate knowledge of that conduct or material by a supervisor" and "[i]nsofar as plaintiff suggests that supervisor and superintendents' participation in sexual misconduct in the workplace serves as a basis on which to impute the . . . misconduct to [the employer] because the high-level employees' participation in sexual misconduct in the workplace amounts to tacit acceptance of such misconduct, the Court rejects this argument.") However, a jury may consider the public and persistent nature of the co-worker harassment, and the fact that it apparently took place in

well-trafficked areas like hallways, cafeterias, and staff rooms, when evaluating the likelihood that a supervisor saw or overheard the harassment. (*See* Def. Local R. 56(a) Stmt. ¶ 7-13); *see also Notaro v. Fossil Indus., Inc.,* 820 F. Supp. 2d 452, 459 (E.D.N.Y. 2011) (holding there was a genuine dispute of material fact as to whether supervisors had constructive knowledge of the harassment when Plaintiffs asserted "that the office was so small that [their supervisors] must have overhead many of the incidents of alleged harassment.").

Aside from the proximity of Hogsten to the harassment, Plaintiff argues that the exchange between Emily Reed and Dr. Austen where Dr. Austen says that Plaintiff is being "branded" as a gigolo implies an "[o]ngoing branding" that "takes time and involves more than one communication" and was "maintained by supervisors and non-supervisors in the Defendant's workplace." (Pl.'s Object. at 5.) Plaintiff also maintains that a finding of knowledge is supported by Hogsten's comment that Plaintiff "likes an old lady," which he argues showed that she was "participating in the harassment" and the "branding." (*Id.*) Finally, at oral argument, Plaintiff pointed more broadly to the widespread pervasiveness of the harassing language among supervisor and staff alike as supporting an inference that multiple conversations about Plaintiff and his sexuality took place throughout Plaintiff's work environment. Taken together, Plaintiff argues that the evidence allows an inference that his supervisors, including Anne Hogsten, were aware of the harassment carried out by his coworkers and were mirroring that harassment with their own language. (*Id.*)

Although a close call, the Court concludes that when the environment in which the harassment took place is viewed in conjunction with Hogsten's use of the exact same harassing language used by several non-supervisory coworkers, coupled with Dr. Austen's comment about "branding," a reasonable jury could find that Defendant knew or should have known of Plaintiff's harassment based on the knowledge of Anne Hogsten, and it is undisputed that Defendant took no action to correct the harassment while Plaintiff was

11

employed by Defendant. Although Ms. Hogsten denied in her deposition that she knew Plaintiff was being harassed, "a supervisor's purposeful ignorance of the nature of the problem" will not serve to shield them from liability, and a reasonable jury might also choose to discount Ms. Hogsten's claimed ignorance given her apparent participation in the harassment. *Duch*, 588 F.3d at 766. Similarly, the fact that Plaintiff never made an affirmative complaint to Hogsten does not compel a finding to the contrary; "[w]hile the fact that a complaint was unreported may be relevant in considering whether an employer had knowledge of the alleged conduct, an employer is not necessarily insulated from Title VII liability simply because a plaintiff does not invoke her employer's internal grievance procedure if the failure to report is attributable to the conduct of the employer or its agent." *Distasio*, 157 F.3d at 64.

Because a dispute of material fact exists as to whether liability for the harassment perpetrated by Plaintiff's coworkers can be imputed to Defendant, summary judgment as to hostile environment created by Plaintiff's coworkers is denied.

### B. Liability for Supervisory Harassment

When the supervisor is the one who "wields the authority delegated to him by an employer . . . to further the creation of a discriminatorily abusive work environment, the supervisor's conduct is deemed to be that of the employer, and the employer's liability for that conduct is absolute." *Murray v. New York Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995). As noted above, Defendant does not contest that the statements made by Plaintiff's supervisors are attributable to Defendant. Instead, it invokes the *Faragher/Ellerth* affirmative defense, which allows an employer to avoid liability if it establishes both of the following two prongs: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities

provided by the employer or to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

The *Faragher/Ellerth* defense only applies if the hostile work environment did not culminate in a tangible employment action, but the Court has already found that Plaintiff's termination was not "caused by the same animus which motivated his alleged hostile work environment;" no facts on summary judgment give the Court reason to change its view, nor does Plaintiff argue otherwise. (Ruling on Mot. to Dismiss at 17-18.) As such, the Court does not need to revisit the issue of whether the hostile environment culminated in his termination, and Defendant will not be barred from raising the *Faragher/Ellerth* defense on that basis.

However, the disputes of material fact that precluded summary judgment on liability for coworker harassment also weigh against entitlement to summary judgment on the *Faragher/Ellerth* defense. The Court cannot determine whether Defendant took reasonable care to prevent sexually harassing behavior if there remain questions of material fact as to whether the sexual harassment policy had a reasonable avenue of complaint, which is necessarily a factor in determining the reasonableness of Defendant's prevention efforts. *See, e.g., D'Angelo v. World Wrestling Ent., Inc.,* No. 3:08-CV-1548 JCH, 2010 WL 4226479, at *7 (D. Conn. Oct. 18, 2010) (discussing the reasonable avenue of complaint as a factor in evaluating whether the reasonable care requirement of the *Faragher/Ellerth* defense was met.) As to whether Defendant "correct[ed] promptly" the offending behavior, it is undisputed that none of the harassment was ever addressed during the term of Plaintiff's employment; the same analysis that leaves open issue of whether Anne Hogsten was aware of the coworker harassment applies in full force here, as four of Plaintiff's supervisors were involved in using parallel phrases and language to harass him, and it was Dr. Austen who made the observation that Plaintiff was being "branded." *See id.* (holding that where three supervisors were aware

of the plaintiff suffering harassment at the hands of another supervisor, summary judgment on the first prong of the *Faragher/Ellerth* defense was precluded); *Dawson v. Cnty. of Westchester*, 351 F. Supp. 2d 176, 191 (S.D.N.Y. 2004) ("[s]ummary judgment is not appropriate where clear factual issues exist as to whether a defendant, who had notice of a plaintiff's allegations of a hostile work environment, took reasonable steps to eradicate the harassment.")

While this affirmative defense will remain available to Defendant at trial as an evidentiary matter, Defendants have not met the first prong as a matter of law, and summary judgment as to liability for the supervisory harassment is also denied.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment [Doc. # 62] is DENIED. The parties' joint trial memorandum and related motions shall be filed by December 21, 2022.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 22nd day of November, 2022